**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**MATTHEW DANIEL HALL**                                                         **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 3:23-cv-3047-KHJ-MTP**

**COMMISSIONER OF SOCIAL SECURITY**                                  **DEFENDANT**

## REPORT AND RECOMMENDATION

Plaintiff Matthew Daniel Hall brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Commissioner of Social Security Administration's final decision ceasing his entitlement to supplemental security income benefits. Having considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Commissioner's final decision be affirmed in part and reversed in part and this action be remanded for further consideration.

## PROCEDURAL HISTORY

On May 21, 2018, the Social Security Administration ("SSA") determined that Plaintiff was disabled due to restrictions caused by the following severe impairments: "status post-right ACL reconstruction, Hill-Sachs defect of right shoulder, seizure disorder, alcohol abuse disorder, mood disorder, cannabis abuse in remission, traumatic brain injury, and bipolar disorder." (Administrative Record [10-2] at 31). Subsequently, the SSA reviewed Plaintiff's disability[1] and

---

[1] Pursuant to 20 C.F.R. § 404.1594(a), a claimant's continued entitlement to disability benefits is to be reviewed periodically. The SSA may terminate disability benefits if substantial evidence demonstrates that:
    (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

    (B) the individual is now able to engage in substantial gainful activity . . . .

1

determined that as of July 6, 2021, Plaintiff was no longer disabled due to medical improvement. ([10-3] at 26).

After a disability hearing officer affirmed the finding, an Administrative Law Judge ("ALJ") conducted a hearing, and on July 12, 2023, the ALJ issued a decision affirming the cessation of benefits. ([10-1] at 16-34).  The ALJ specifically determined that as of July 6, 2021, Plaintiff was not disabled because "a substance use disorder [wa]s a contributing factor material to the determination of continuing disability." ([10-1] at 16).  Plaintiff appealed the ALJ's decision to the Appeals Council.  On September 19, 2023, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. ([10-1] at 2-4).  Plaintiff now seeks judicial review in this Court under 42 U.S.C. § 405(g).

**ADMINISTRATIVE LAW JUDGE'S DECISION**

To determine whether Plaintiff remained disabled, the ALJ applied the seven-step sequential evaluation process set forth in 20 C.F.R. § 416.994(b)(5).[1] This evaluation requires the ALJ to make the following determinations:

(1) whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
(2) if not, whether there has been medical improvement;
(3) if so, whether the medical improvement is related to the claimant's ability to do work (if not, the analysis proceeds to step four; if so, the analysis proceeds to step five);
(4) whether an exception to medical improvement applies (if one of the first group of exceptions applies, the analysis proceeds to the next step; if one of the second group of exceptions applies, disability ends; and if none apply, the claimant's disability continues);
(5) whether the claimant's impairment or combination of impairments is severe;
(6) if so, whether the claimant can perform past relevant work;
(7) if not, whether the claimant can perform other work.

---

[1] *See* 42 U.S.C. § 423(f)(1).

*See* 20 C.F.R. § 416.994(b)(5).[2]

The ALJ also considered the Social Security Act's prohibition on awarding benefits to a disabled individual whose drug addiction or alcoholism is "a contributing factor material to the Commissioner's determination that the individual is disabled." *See* 42 U.S.C. § 423(d)(2)(C). Alcoholism or drug addiction is a material factor if the individual would be found not disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. § 416.935(b). This determination requires a consideration of which impairments would remain if the individual stopped using drugs or alcohol and whether the remaining impairments would be disabling. *Id*. Here, the ALJ accounted for Plaintiff's substance abuse in addressing the steps of the sequential evaluation process.

At step one, the ALJ determined that Plaintiff had the medically determinable impairments of "alcohol abuse disorder; cannabis use disorder; stimulant use disorder; bipolar disorder; large anterior Bankart tear[3] of the left shoulder, with some deficient anterior glenoid bone; Hill-Sachs lesion[4] of the left shoulder; mild narrowing of medial compartments of the bilateral knees, with evidence of previous right ACL repair; and epilepsy" but that these impairments did not meet or equal a listing, even considering Plaintiff's substance abuse. ([10-1] at 18). At step two, the ALJ determined that there had been medical improvement as of July 6, 2021. ([10-1] at 20). At step three, the ALJ determined that Plaintiff's medical improvement was

---

[2] Unlike initial disability determination proceedings, "the ultimate burden of proof lies with the Secretary in termination proceedings." *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991). In other words, once benefits have been awarded, the claimant is afforded a "presumption of continuing disability that requires the Secretary to provide evidence" that the claimant's condition has improved. *Taylor v. Heckler*, 742 F.2d 253, 255 (5th Cir. 1984).

[3] A "Bankart tear," also known as a glenoid labrum tear, is a torn labrum allowing the humeral head to slip out of its socket more easily. *See* https://www.ncbi.nlm.nih.gov/books/NBK587359/ (last visited November 1, 2024).

[4] A "Hill-Sachs lesion" is a depression in the humeral head caused by a shoulder dislocation. *See* https://pubmed.ncbi.nlm.nih.gov/22474094/ (last visited November 1, 2024).

3

related to his ability to work, which dictated that the evaluation proceed to step five. ([10-1] at 21). The ALJ determined at step five that Plaintiff continued to have severe impairments. ([10-1] at 21).

Before addressing whether Plaintiff could perform past relevant work—the sixth step of the evaluation process—the ALJ examined the record and determined that Plaintiff, while abusing substances, had the residual functional capacity ("RFC")[5]

> to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. He can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can frequently, but not constantly, reach with his left upper extremity. He must avoid all exposure to work at heights, work with or near hazardous machinery, and commercial driving. He is incapable of maintaining attention, concentration, and pace on a sustained basis, interacting appropriately with others on a regular basis, and adapting to even occasional changes in a routine work setting.

([10-1] at 21).

At step six, the ALJ found that Plaintiff had no past relevant work, as he has never had a job. ([10-1] at 24). Then, considering Plaintiff's age, education, and RFC *with the limitations caused by his substance abuse*, the ALJ determined at step seven that no jobs existed in significant numbers in the national economy that Plaintiff could perform. ([10-1] at 24). Thus, the ALJ found that Plaintiff would be disabled while abusing drugs and alcohol.

As required by the Social Security Act, the ALJ then considered what impairments and limitations would remain if Plaintiff stopped abusing drugs and alcohol. The ALJ determined that in such a scenario, Plaintiff would have the RFC

> to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-

---

[5] "Residual Functional Capacity" is defined as the most an individual can still do despite the physical and/or mental limitations that affect what the individual can do in a work setting. 20 C.F.R. §§ 404.1520(a)(4), 404.1545(a)(1).

4

>hour workday.  He can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs but can never climb ladders, ropes, or scaffolds.  He can frequently, but not constantly, reach with his left upper extremity.  He must avoid all exposure to work at heights, work with or near hazardous machinery, and commercial driving. He can understand, remember, and carry out instructions in order to perform routine, repetitive tasks, and he can maintain attention and concentration for routine, repetitive tasks for two-hour periods in an eight-hour day with minimal supervision and without extended breaks.  He can interact appropriately with others on a limited basis, which I am defining as occasional interaction with co-workers and supervisors, but no tandem tasks, and no interaction with the public.  He is capable of making occasional work-related decisions and adapting to occasional changes in a routine work setting.

([10-1] at 27).

Returning to the seventh step of the evaluation process, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform if he were to stop his substance abuse. ([10-1] at 33).  The ALJ determined that substance abuse was a contributing factor material to the disability determination because Plaintiff would not be disabled as of July 6, 2021, if he stopped the substance use. ([10-1] at 33).  As a result, the ALJ concluded that Plaintiff's disability ended on July 6, 2021. ([10-1] at 34).

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983).  To be substantial, the evidence "must do more than create a suspicion of the existence of the fact to be established."  *Id*.

However, "[a] finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704

(5th Cir. 2001) (internal citations and quotations omitted). Conflicts in the evidence are for the Commissioner, not the courts, to resolve. *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). A court may not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders,* 914 F.2d at 617. Moreover, "'[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

**ANALYSIS**

Plaintiff presents three issues for this Court's consideration:

1. Did the ALJ err by failing to properly evaluate if the Plaintiff's condition had medically improved?

2. Did the ALJ err by failing to consider if Plaintiff could sustain employment for a significant period of time?

3. Did the ALJ err in consideration of Plaintiff's left upper extremity?

([14] at 3).

*Medical Improvement*

The most recent favorable medical decision finding Plaintiff to be disabled occurred on May 21, 2018. This decision is known as the "comparison point decision" or "CPD".[6] Here, the CPD came from an ALJ who found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except the individual can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. He can

---

[6] "The most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether you were disabled or continued to be disabled which became final." 20 C.F.R. § 416.994(b)(1)(vii).

>never crawl or climb ladders, ropes, or scaffolds. He can occasionally reach with his right upper extremity, but he can never reach overhead with his upper tight extremity. He must avoid any exposure to hazards such as moving mechanical parts or high, exposed places. He cannot operate a vehicle. He has the ability to understand, remember, and carry out instructions to perform simple, routine, and repetitive tasks, but not at a production rate pace. He is limited to an isolated work setting defined as occasional interaction with supervisors and co-workers, but no collaborative tasks and no interaction with the public. He is limited to a low stress work environment, defined as tasks that are simple and routine in nature with no inflexible or fast-paced production requirements and no more than occasional changes in the work setting.

([10-2] at 32).

The ALJ responsible for the CPD considered Plaintiff's substance abuse and determined that his "impairments would not improve to the point of nondisability in the absence of the substance use disorder(s)," thus, finding that Plaintiff "would still be disabled in the absence of the substance use disorder(s)." ([10-2] at 35).

As previously explained, to determine whether Plaintiff remained disabled in the years following the CPD, the last ALJ to examine Plaintiff's disability considered whether there had been medical improvement. "Medical improvement . . . is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment." 20 C.F.R. § 404.1594(c)(1). Thus, the regulations require an ALJ to compare the current medical evidence with the prior medical evidence supporting the CPD. Plaintiff argues that the ALJ failed to make such a comparison.

In her July 12, 2023, decision, the ALJ generally cites to her consideration of the "entire record." ([10-1] at 18). The ALJ, however, does not specifically discuss the medical evidence underlying the original disability finding. She only discusses the medical evidence postdating the CPD. She makes no "comparison of prior and current medical evidence" and does not

7

explain how Plaintiff's impairments improved. Without a comparison of the prior and current medical evidence, the decision reads like an initial finding of no disability, not a finding of medical improvement.

"It is up to the ALJ in the first instance to compare the prior and current medical evidence in discharging his affirmative obligation under §§ 404.1594(c)(1) and 416.994(b)(2)(i)." *Marcelin v. Berryhill*, 2017 WL 3981155, at *6 (E.D. La. Aug. 15, 2017). "In the absence of this substantive comparison, the Court cannot evaluate whether substantial evidence supports that ALJ's finding that medical improvement occurred . . . ." *Maldonado v. Commissioner*, 2021 WL 8939489, at *5 (M.D. Fla. Sept. 10, 2021); *see also Vaugh v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) ("Without such a comparison, no adequate finding of *improvement* could be rendered.").[7]

Although the Fifth Circuit has not specifically addressed this issue,[8] multiple federal circuit and district courts have found that reversal and remand are required on facts similar to those presented here. *See Gustafson v. Saul*, 2021 WL 3145664, at *6 (W.D. Tex. July 26, 2021) (collecting cases). "If the Commissioner fails to compare the claimant's new medical evidence with the prior medical evidence supporting the initial finding of disability in assessing medical improvement, the court must remand the case 'for application of the proper legal standard.'"

---

[7] Plaintiff, in his Brief [14], cites a single case, *Smith v. Commissioner*, 2017 WL 2292795, at *3 (N.D. Miss May 24, 2017), to support his argument that the ALJ's decision is not supported by substantial evidence because it lacks a discussion of the medical evidence underlying the initial disability determination. In response, the Commissioner points out that in *Smith*, unlike here, the medical records relating to the CPD were not included in the administrative record. While these medical records may have been available here, the ALJ did not discuss them or compare them to the current medical records as required by the regulations.

[8] In *Hallaron v. Colvin*, a case where the medical records relating to the CPD were unavailable, the Fifth Circuit reversed an ALJ's finding of medical improvement and remanded the action, instructing that "[i]f the file can be reconstructed, the ALJ will be able to *make the comparison the regulations mandate* . . . ." 578 Fed. Appx. 350, 353-54 (5th Cir. 2014).

8

*Loudermilk v. Commissioner*, 2020 WL 3422214, at *5 (N.D. Ala. May 20, 2020) (quoting *Lawrence v. Heckler*, 739 F.2d 567, 568 (11th Cir. 1984)).

Under the circumstances presented, this action should be remanded to allow the ALJ to determine whether medical improvement has occurred by comparing prior and current medical evidence.

Although the undersigned is recommending the Court remand this action based on Plaintiff's first issue, the undersigned, for the sake of completeness, will also address Plaintiff's two remaining issues. Moreover, it appears that in these remaining issues, Plaintiff is arguing that—regardless of whether the ALJ considered medical improvement—she did not consider whether Plaintiff could sustain employment and erred in her consideration of Plaintiff's left shoulder. Thus, the ALJ's consideration of medical improvement on remand may not impact the ALJ's prior findings concerning sustained employment and Plaintiff's left shoulder.

**Sustained Employment**

Federal regulations define disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. 404.1505(a). According to Plaintiff, the ALJ erred by failing to consider whether his "severe mental illness"[9] prevented him from sustaining employment for a significant time period. ([14] at 9). More specifically, Plaintiff argues that the ALJ failed to make specific findings concerning his ability to maintain work on a regular and continuing basis.

---

[9] As previously mentioned, the ALJ found that Plaintiff suffered from bipolar disorder, along with alcohol abuse disorder, cannabis use disorder, and stimulant use disorder. ([10-1] at 21). The ALJ also found that Plaintiff suffered from epilepsy, a large anterior Bankart tear of the left shoulder, a Hill-Sachs lesion of the left shoulder, and mild narrowing of medial compartments of the bilateral knees. ([10-1] at 21).

The Fifth Circuit has made clear that an ALJ need not, in every case, articulate separate and distinct findings that a claimant can maintain employment over a sustained period. *See Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). "Reviewing courts generally assume that . . . the RFC includes implicit findings of a claimant's ability to work on a regular and continuing basis." *Brumley v. Saul*, 2021 WL 1111045, at *3 (S.D. Tex. Mar. 23, 2021) (brackets and citation omitted); *see also Frank*, 326 F.3d at 619 ("the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment."). Separate findings regarding a claimant's ability to maintain employment is only required in "a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Frank*, 326 F.3d at 619.

The undersigned first notes that courts in this circuit have "rejected the notion that a mere diagnosis of bipolar disorder automatically requires the ALJ to make a separate finding regarding the ability to maintain employment." *Brumley*, 2021 WL 1111045, at *3 (collecting cases). Plaintiff, however, asserts that he has presented ample evidence that his mental impairment waxes and wanes in its manifestation of disabling symptoms as addressed in the *Frank* decision.

Citing several hospitalizations from March 11, 2021, to September 19, 2022, Plaintiff argues that the medical records "clearly support the fact that this claimant could not sustain or maintain gainful employment." ([14] at 9-10). The ALJ discussed all of these hospitalizations and noted that each occurred during a period when Plaintiff was abusing drugs. ([10-1] at 23-24).[10] As the ALJ noted, substance abuse had a profound effect on Plaintiff's ability to work.

---

[10] On March 11, 2021, Plaintiff was hospitalized for alcohol withdrawal and tested positive for amphetamines, benzodiazepines, and cannabinoids. On May 21, 2021, he tested positive for cannabinoids, amphetamine, and methamphetamine. He was admitted on July 21, 2021, for

The ALJ specifically found that with the limitations caused by Plaintiff's substance abuse, no jobs existed in significant numbers in the national economy that he could perform. ([10-1] at 24). The ALJ determined that Plaintiff was "incapable of maintaining attention, concentration, and pace on a sustained basis, interacting appropriately with others on a regular basis, and adapting to even occasional changes in a routine work setting." ([10-1] at 21).

The ALJ's analysis did not end there. As required by the regulations, the ALJ considered what limitations would remain if Plaintiff stopped abusing substances. The ALJ noted that during periods when Plaintiff was not abusing drugs, his mental heath examinations were normal and his treatment and medications were effective. ([10-1] at 20). Indeed, when Plaintiff was discharged from Region Eight Mental Health Services in September of 2021, his provider noted: "I do not see any behavior which cannot be explained by drug use, antisocial traits, and poor impulse control . . ." ([10-1] at 24; [10-8] at 166). Additionally, on February 17, 2022, Dr. Angela Herzog, a state agency medical consultant, determined: "Abstinence from the abuse of psychoactive substances will be crucial to [Plaintiff's] capacity to obtain and sustain productive work activity." [10-2] at 71

The record does not demonstrate that Plaintiff's impairments wax and wane in their manifestation of disabling symptoms in the absence of substance abuse. *See Brumley*, 2021 WL 1111045, at *4 ("In short, nothing in the record demonstrates that [plaintiff's] bipolar disorder or mental impairments, in the absence of his substance use, cause intermittent periods of incapacity."); *see also Crainey v. Astrue*, 2012 WL 5846406, at *8 (N.D. Tex. Nov. 1, 2012) ("Here, in contrast, [plaintiff] points to no evidence in this case that her particular impairment

---

substance abuse, mood instability, and medication non-compliance. On August 26, 2021, and January 12, 2022, he tested positive for THC, amphetamine, and methamphetamine. Plaintiff again tested positive for methamphetamines and other substances on September 19, 2022.

waxes and wanes in an intensity that manifests disabling symptom when she is not abusing drugs."). Thus, the ALJ did not err by failing to make a separate finding regarding Plaintiff's ability to maintain employment.

*Left Shoulder*

The ALJ determined that among Plaintiff's severe impairments, he suffered from a large anterior Bankart tear of the left shoulder, with some deficient anterior glenoid bone, and a Hill-Sachs lesion of the left shoulder. ([10-1] at 18). According to the ALJ, these impairments affected Plaintiff's RFC such that: "He can frequently, but not constantly, reach with his left upper extremity." ([10-1] at 27).

Plaintiff argues the evidence relating to his left shoulder shows that his abilities are more limited—specifically, that he is unable to frequently reach with his left arm. Plaintiff cites two treatment notes. On January 18, 2022, Plaintiff was treated for a shoulder dislocation and instructed to keep his arm in a shoulder immobilizer and to follow up with a surgeon regarding a shoulder replacement. ([10-8] at 274). Plaintiff received treatment for shoulder pain on February 10, 2022, during which the provider noted "significant instability about the left shoulder" and "fairly large anterior Bankart tear and some deficient anterior glenoid bone." ([10-8] at 280). This evidence, argues Plaintiff, "simply does not comport with the RFC" assigned by the ALJ. ([14] at 11).

The ALJ specifically acknowledged Plaintiff's "large anterior Bankart tear" and discussed the medical records concerning his left shoulder. ([10-1] at 18; 30-31). The ALJ noted that during an examination on September 20, 2021, Plaintiff had normal range of motion and normal strength. ([10-1] at 30; [10-8] at 92). Another examination on December 14, 2021, revealed normal range of motion. ([10-1] at 30; [10-9] at 277). On December 16, 2021, Plaintiff

was treated at Capital Ortho for left shoulder pain, and the provider noted a bony Bankart fracture but also good strength and a lack of gross instability. ([10-1] at 30; [10-8] at 278).

Additionally, the ALJ specifically considered the medical records cited by Plaintiff—those from January 18, 2022, and February 10, 2022. ([10-1] at 30-31). At the last visit on February 10, 2022, the provider stated: "I think his injury is amenable to arthroscopic Bankart repair." ([10-8] at 281). As the ALJ noted, however, it is unclear whether the surgery was performed, and Plaintiff acknowledged he is no longer receiving treatment for his left shoulder. ([10-1] at 27, 31).

The ALJ also considered the testimony of Plaintiff and his mother concerning his shoulders, but determined that the limitations they described were not consistent with the medical evidence. ([10-1] at 22-23, 27-28). Finally, the ALJ considered the opinion of Dr. Sharka Junejo, a state agency medical consultant, who on May 27, 2022, determined that Plaintiff's ability to reach with his left arm was limited but that he remained able to frequently reach in front, laterally, and overhead. ([10-2] at 69). The ALJ gave Dr. Junejo's opinion great weight. ([10-1] at 32).

The undersigned recognizes that there is some evidence of record which supports Plaintiff's position on this issue. However, the ALJ gave sufficient reasons for her findings and pointed to portions of the record—such as Dr. Junejo's opinion and Plaintiff's admission that he is no longer receiving treatment—which constitute credible and substantial evidence supporting the ALJ's determination. The Court does not resolve conflicts in the evidence; that is left to the discretion of the Commissioner. Credible evidence supports the Commissioner's determination on this issue. *Selders*, 914 F.2d at 617; *Boyd*, 239 F.3d at 704.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that:

1. The Commissioner's final decision be affirmed in part and reversed in part;

2. This action be remanded to the Commissioner for further administrative proceedings in accordance with this report and recommendation; and

3. All other relief requested by Plaintiff be denied.

## NOTICE OF RIGHT TO OBJECT

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

This 5th day of November, 2024.

s/ Michael T. Parker
United States Magistrate Judge